**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF NEW YORK**

_____

**ARTURO DeJESUS, 00-B-2373,**

                                        **Petitioner,**

                **-v-**                                        **06-CV-0375(Sr)**

**SUPT. GERALD GREENE,**

                                        **Respondent.**

_____

## DECISION AND ORDER

        In accordance with 28 U.S.C. § 636(c), the parties have consented to

have the undersigned conduct all further proceedings, including entry of judgment, with

respect to this petition for _habeas corpus_ relief pursuant to 28 U.S.C. § 2254.  Dkt. #10.


        Petitioner, proceeding _pro se_, challenges his conviction following a jury

trial before the Hon. Mario J. Rossetti, J.S.C., on the charges of attempted murder in

the second degree in violation of sections 110.0 and 125.25(1) of New York's Penal

Law and criminal possession of a weapon in the fourth degree in violation of section

265.01(2) of New York's Penal Law on the ground that the evidence of intent was

insufficient to support his conviction.  Dkt. #1.  For the following reasons, the petition is

denied.


## BACKGROUND

        On the evening of January 15, 2002, Carl Scott and Joe Campbell met

petitioner and Jim Milligan and walked to petitioner's residence at 416 Jersey Street in

the City of Buffalo.  Trial Transcript at pages 291-293 ("T291-93").  Carl observed an empty bottle of Canadian Leaf whiskey on the coffee table.  T294.  They shared four forty ounce bottles of malt liquor and at about 10:00 p.m., petitioner, Carl and Joe went to the store to purchase beer, leaving Jim passed out on the couch.  T219-295.  When they returned to the residence, Jim woke up and Carl helped him get up from the couch so that he could go to the bathroom.  T297.  Carl testified that Jim was staggering and bumping into the wall as he walked to the bathroom.  T298.

Carl testified that "Jim came staggering out of the bathroom and he sat on one of the chairs and these were white plastic chairs and the chair broke and that's when [petitioner] got pissed off."  T299.  Specifically, Carl testified that petitioner "started beating up on Jim," but "Jim being as intoxicated as he was . . . couldn't . . . fight back."  T240 & T256.  Carl and Joe observed petitioner kick and punch Jim in the head and back.  T261 & T284.  Joe recalled petitioner saying, "you're my cousin," but "you disrespected my house."  T243.

Carl grabbed both of petitioner's arms and got him off of Jim and onto the couch, but petitioner "[g]ot back up and started punching" Jim in the face.  T257, T285 & T302.  Carl tried to break it up a second time, but was unable to do so.  T285.  Carl denied that Jim ever tried to fight back or ever grabbed petitioner by the throat.  T300.  Joe also denied observing Jim strike petitioner.  T243.  Carl testified that they were all drunk.  T309.  Joe testified that petitioner and Jim were drunk.  T239.

City of Buffalo Police Officer Jason Mayhook and his partner, Anthony LaPiana were called to 416 Jersey Street in the City of Buffalo at approximately 1:45 a.m. on January 16, 2002.  T113.  Petitioner let the officers into the residence, at which time the officers observed two men, Joseph Campbell and Carl Scott, sitting on a couch and the victim, James Milligan, lying bloody and motionless on the floor.  T114 & T122.  Petitioner, Joseph Campbell and Carl Scott were each holding beer bottles.  T131.  Officer Mayhook asked what happened, and petitioner responded, "I beat the fuck out of him."  T115 & T148.  Petitioner continued,

> I beat the fuck out of him.  I did it all by myself.  Why do you care.  He's not human.  Kiss my white Puerto Rican ass.

T115.


Rural Metro paramedic Tracie Redmond testified that the victim

> had pretty significant facial head trauma.  He was barely conscious, not really making much sense, basically just muttering unintelligibly, saying he was cold. Repetitive questioning, repetitive []statements.  We put oxygen on him . . . eventually put him on a back board and got him in the ambulance, started IV's and drove quickly to the hospital.

T166.  Ms. Redmond explained that she diagnosed "massive head trauma" because

> He had large hematomas, which are basically giant bruises that swell, to his face, to his head.  His pupils were unequal and repetitive questioning.  He had all of those signs and symptoms of head injury.  He wasn't alert and oriented.

T167.  By the time the victim arrived at the hospital, the victim's "level of consciousness had decreased to the point where he needed . . . to be intubated."  T169.  Dr. Igoe examined the victim in the emergency room at the Erie County Medical Center,

intubated him, diagnosed a serious brain injury and assessed his condition as critical and his prognosis grave.  T275-80.

Officer Mayhook placed petitioner under arrest and transported him downtown, at which time he provided petitioner with *Miranda* warnings.  T116 & T149. Thereafter, petitioner asked Officer Mayhook,

> is he dead yet. [sic] When is he going to fucking die. [sic]

T119 & T149.  Officer Mayhook informed petitioner that his cousin was "in bad shape," prompting petitioner to respond, "[g]ood for his ass."  T121.  When asked on cross examination whether petitioner appeared intoxicated or high, Officer Mayhook testified that petitioner

> wasn't falling down.  He wasn't slurring his speech.  He was coherent, answered any questions I had for him.

T134.  Officer LaPiana testified that he smelled alcohol on petitioner and had observed two or three forty ounce beers in the residence but denied that petitioner exhibited slurred speech or difficulty moving around or responding to the officers.  T163-164.

City of Buffalo Police Detective Raniero Masecchia also provided petitioner with *Miranda* warnings before interviewing him.  T179 & T181.  After providing identifying information, petitioner stated that he

> beat the fuck out of my cousin.  I beat him up.  I fucked him up real bad.  Then he asked me did I kill him. [sic]  He goes [sic] I really beat the shit out of him.

T180.  Petitioner provided the following written statement:

> me and Jimmy were home and Carl came over with his brother Joe.  We sat around drinking, smoking some weed.

> After a while Jimmy gets goofy.  He started getting wild,
> saying that he was going to kick my ass.  I didn't want to
> hear that shit.  I had a coffee table.  He broke that first and I
> let that go.  Then he broke my wooden chair in the living
> room and then I got crazy.  I just beat the shit out of him.  I
> punched him.  I just kept punching him.  I still got the blood
> on my hand.  Carl and Joe was trying to stop me and then I
> started giving Jimmy the boots for disrespecting my house.
> After I got done giving him the boots he was just laying
> there. I fucked him up bad.  I had to call . . . the police.

T186-187.  Petitioner confirmed that he was trying to kill the victim, then stated, "I know

he won't press charges against me."  T188.


Petitioner stated that the victim fought back by grabbing petitioner by the

throat and punching him one time.  T188.  Petitioner also stated that he loved his

cousin but he "shouldn't have grabbed my throat."  T190.  Petitioner stated that Carl

and Joe grabbed him, telling petitioner to leave the victim alone, but petitioner

continued kicking his back and head.  T188.  Petitioner denied that any one else struck

the victim and confirmed that he drank a pint of Canadian leaf whiskey and some beer.

T188-189.  Detective Masecchia testified that

> You could tell he had been drinking.  You could smell the
> alcohol on him.  His eyes were a little bloodshot, but there
> were no slurring of words, no stumbling when he was
> walking.  Went to the bathroom a couple of times during the
> course of the morning.  Had some coffee.  Every question I
> asked him he answered very coherently, but you could tell
> he had been drinking.

T181.  Detective Sergeant Costantino agreed that petitioner had been drinking, but

opined that petitioner wasn't drunk, explaining:

> he smelled of alcohol and he wasn't staggering.  He wasn't
> stumbling around.  He was speaking very well.  He wasn't
> slurring his words.

T213-14.

The police photographer took photographs of petitioner's hands, confiscated his clothing and boots, and took some swabs.  T192.  John Simich, Assistant Laboratory Director at the Erie County Central Police Services Forensic Laboratory, testified that the victim's blood was on petitioner's right boot and hand.  T232 & 236.

At the close of proof, defense counsel made a

> motion to dismiss the charges of the indictment as the
> people have failed to establish a prima facie case on each of
> the charges.  With regard to the charge of the first count of
> attempted murder in the second degree there has been no
> establishing of an intent on behalf of my client to attempt to
> cause the death of James Milligan.

T314.  The trial judge denied the motion.  T316.  Defense counsel sought a jury charge with respect to intoxication and the affirmative defense of extreme emotional disturbance.  T321.  The trial judge agreed to charge the jury on intoxication with respect to the attempted murder charge, but declined to charge extreme emotional disturbance.  T324.

In summation, defense counsel questioned petitioner's "intent to kill his cousin," arguing that the "significant alcohol consumption . . . by those individuals turned a simple incident of damaged furniture to an individual who is now in a coma."  T328-29.  Defense counsel argued that petitioner didn't mean it when he said he intended to kill his victim, explaining "[h]e meant to teach his cousin a lesson for busting up his apartment, but he didn't intend to kill him."  T333.

The trial court charged the jury that it could "consider evidence of a defendant's intoxication in determining whether or not the mind of a defendant was so obscured by drink that he was incapable of forming the particular criminal intent which the law makes an element of the crime charged." T386. The jury convicted petitioner of attempted murder in the second degree and criminal possession of a weapon in the fourth degree. T396. The petitioner was sentenced as a second felony offender to a determinate sentence of imprisonment of twenty five years followed by five years post release supervision on the attempted murder conviction, with a concurrent one year sentence on the fourth degree criminal possession of a weapon conviction. Sentencing Transcript at page 9.

Om appeal, petitioner argued that there was insufficient evidence that he acted with the necessary intent to kill the victim, arguing instead that the petitioner was under the influence of alcohol and extreme emotional disturbance. Petitioner also argued that it was error to deny a jury instruction regarding the defense of extreme emotional disturbance. In a Memorandum and Order entered March 18, 2005, the Appellate Division determined that

> Defendant has failed to preserve for our review his contention that there is legally insufficient evidence of his intent to cause the death of another person because he was intoxicated at the time of the crime. Were we to address that contention, we would conclude that it lacks merit. Supreme Court properly charged the jury on the issue of intoxication and there is record evidence to support the jury's determination. We reject the contention of defendant that the court erred in denying his request for a charge on the affirmative defense of extreme emotional disturbance. Even if sufficient evidence of the subjective element of extreme emotional disturbance were present in this case, proof of the objective element is lacking.

*People v. DeJesus*, 16 A.D.3d 1112 (4th Dep't 2005) (internal quotations and citations omitted).  The Court of Appeals denied leave to appeal on April 28, 2005.  *People v. DeJesus*, 4 N.Y.3d 853 (2005).

## DISCUSSION AND ANALYSIS

**AEDPA Review**

Pursuant to the Antiterrorism and Effective Death Penalty Act ("AEDPA"), where a state court has adjudicated the merits of a petitioner's claim, relief may not be granted unless the state court's adjudication:

> (1)     resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2)     resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

The amended standard of § 2254(d)(1) requires the federal court to give considerably more deference to the state court's legal determinations than did the pre-AEDPA standard.  As stated by the United States Supreme Court:

> § 2254(d)(1) places a new constraint on the power of a federal *habeas* court to grant a state prisoner's application for a writ of *habeas corpus* with respect to claims adjudicated on the merits in state court. . . . Under the "contrary to" clause, a federal *habeas* court may grant the writ if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts.  Under the

"unreasonable application" clause, a federal *habeas* court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

*Williams v. Taylor*, 529 U.S. 362, 412-13 (2000) (O'Connor, J.); *see Sacco v. Cooksey*, 214 F.3d 270, 273 (2d Cir. 2000), *cert. denied*, 531 U.S. 1156 (2001). Thus, a federal court may only grant *habeas* relief where the state court's application of clearly established federal law was not only erroneous, but objectively unreasonable. *Williams*, 529 U.S. at 409; *see Yarborough v. Alvarado*, 541 U.S. 652, 665 (2004) ("We cannot grant relief under AEDPA by conducting our own independent inquiry into whether the state court was correct as a *de novo* matter.").


**Exhaustion & Procedural Default**

Before a federal court can address the merits of any federal issue contained in a petition for a writ of *habeas corpus,* the petitioner must have "exhausted the remedies available in the courts of the State." 28 U.S.C. § 2254(b)(1)(A); *See O'Sullivan v. Boerckel*, 526 U.S. 838, 843-44 (1999). "Exhaustion of state remedies requires presentation of the claim to the highest state court from which a decision can be obtained." *Hogan v. Ward,* 998 F. Supp. 290, 293 (W.D.N.Y. 1998), *citing Daye v. Attorney General of the State of New York,* 696 F.2d 186, 190 n.3 (2d Cir. 1982); *see O'Sullivan*, 526 U.S. at 839-40 ("a state prisoner must present his claims to a state supreme [i.e., highest] court in a petition for discretionary review in order to satisfy the exhaustion requirement.").

The same concerns that bar federal *habeas* review of unexhausted claims also bar federal *habeas* review of claims that have been procedurally defaulted in state court.  *See Coleman v. Thompson*, 501 U.S. 722, 731-32 (1991) ("Just as in those cases in which a state prisoner fails to exhaust state remedies, a habeas petitioner who has failed to meet the State's procedural requirements for presenting his federal claims has deprived the state courts of an opportunity to address those claims in the first instance.").

Respondent argues that petitioner's claim of insufficient evidence of intent due to intoxication is precluded because it was not raised properly before the trial court. Dkt. #7, pp.6-7. The Court agrees.  To properly preserve a challenge to the legal sufficiency of a conviction, trial counsel must make a sufficiently specific argument in support of a motion to dismiss.  *People v. Hawkins*, 11 N.Y.3d 484, 492 (2008);  *People v. Gray*, 86 N.Y.2d 10, 19 & 20-21 (1995).  In the instant case, the motion to dismiss did not alert the trial court to the argument that petitioner was too intoxicated to be able to form the necessary intent.  This failure operates as an adequate and independent bar to federal *habeas* review even where, as here, the Appellate Division ruled in the alternative on the merits of the federal claim.  *See Green v. Travis*, 414 F.3d 288, 294 (2d Cir. 2005).

Where a state prisoner has failed to exhaust or has procedurally defaulted a claim by failing to raise it on direct review before the state court, federal *habeas* review is barred unless the prisoner can demonstrate cause for the default and actual

prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." *Coleman*, 501 U.S. at 750.  The scope of this exception is very limited and the burden of proof very heavy.  *Spence v. Superintendent, Great Meadow Corr. Fac.,* 219 F.3d 162, 171-72 (2d Cir. 2000), *citing Sawyer v. Whitley*, 505 U.S. 333, 336 (1992); *see also Calderon v. Thompson*, 523 U.S. 538, 559-60 (1998) (the general standard requires that the petitioner establish actual innocence by clear and convincing evidence).

Petitioner's reply brief suggests that the failure to specifically reference intoxication as precluding capacity to form intent required on a charge of second degree attempted murder would constitute ineffective assistance of counsel.  Dkt. #13.  The Supreme Court of the United States has "acknowledged that in certain circumstances counsel's ineffectiveness in failing properly to preserve the claim for review in state court will suffice" to constitute cause to excuse a procedural default.  *Edwards v. Carpenter*, 529 U.S. 446, 451 (2000).  However, the "exhaustion doctrine . . . generally requires that a claim of ineffective assistance be presented to the state courts as an independent claim before it may be used to establish cause for a procedural default."  *Murray v. Carrier*, 477 U.S. 478, 488-89.  As it does not appear that petitioner has raised an ineffective assistance of counsel claim in the state courts, the claim is unexhausted and may not be used to establish cause for the procedural default of his sufficiency of the evidence claim.  Moreover, there is no evidence to suggest that the Court's failure to review this claim will result in a fundamental miscarriage of justice, *i.e.*, that petitioner is actually innocent.  Accordingly, petitioner's claim is procedurally barred from *habeas* review.

**Sufficiency of the Evidence**

Respondent also argues that the claim lacks merit as the evidence was legally sufficient to support the petitioner's conviction of attempted murder in the second degree.  Dkt. #7, pp. 8-10.

A sufficiency of the evidence claim implicates the due process clause of the fourteenth amendment, which protects a defendant against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged.  *Jackson v. Virginia*, 443 U.S. 307, 315 (1979).  In assessing the sufficiency of the evidence in the context of a petition for writ of *habeas corpus*, "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Id.* at 319.  The essential elements of the crime are determined by "explicit reference to the substantive elements of the criminal offence as defined by state law." *Id.* at 324, n.16.  The court must defer to the jury's "assessments of the weight of the evidence or the credibility of witnesses." *Maldonado v. Scully*, 86 F.3d 32, 35 (2d Cir. 1996).  It is clear, therefore, that a petitioner challenging the sufficiency of the evidence bears "a heavy burden."  *Knapp v. Leonardo*, 46 F.3d 170, 178 (2d Cir.), *cert. denied*, 515 U.S. 1136 (1995).

Pursuant to New York Penal Law, a person is guilty of an attempt to commit a crime when, with intent to commit a crime, he engages in conduct which tends to effect the commission of such crime.  N.Y. Penal Law § 110.00.  A person is guilty of murder in the second degree when, with intent to cause the death of another person, he

causes the death of such person.  N.Y. Penal Law § 125.25(1).  Thus, "[t]he crime of attempted second degree murder is committed when, with the intent to cause the death of another person, one engages in conduct which tends to effect the commission of that crime."  *People v. Fernandez*, 88 N.Y.2d 777, 783 (1996).  In the instant case, a rational trier of fact could conclude that the essential elements of attempted murder in the second degree had been proven beyond a reasonable doubt.  The intent to cause Jim Milligan's death is established by petitioner's kicking the victim in the head with his boots, petitioner's continuation of the assault after being restrained by Mr. Scott, and petitioner's statements to multiple police officers at different times that he wanted to kill his cousin.  Petitioner's ability to repeatedly kick and punch petitioner and to overcome Carl's attempt to restrain him, combined with law enforcement officers' assessment of petitioner's capacity to respond to their questions and petitioner's statements is sufficient evidence to support the jury's determination that petitioner was not so intoxicated as to have been incapable of forming intent to kill.  Repeatedly punching and kicking someone about the head satisfies the element of conduct which tends to cause death.

Although extreme emotional disturbance is a partial affirmative defense to second degree murder, permitting a reduction of the conviction from murder to manslaughter in the first degree, such a defense should not be charged absent credible evidence of an objectively reasonable explanation or excuse for the emotional disturbance and subjective evidence that the defendant was acting under the influence of an extreme emotional disturbance at the time the alleged crime was committed.

*People v. White*, 79 N.Y.2d 900, 903 (1992).  In the instant case, there is no reasonable explanation or excuse for petitioner's reaction to Mr. Milligan's destruction of petitioner's personal property, therefore, there was no error in refusing to provide such a charge to the jury.  *See Smith v. Perez*, 722 F. Supp.2d 356, 381 (W.D.N.Y. 2010).  As a result, the petition for writ of *habeas corpus* would be denied on the merits even if it were not procedurally barred.


## CONCLUSION

Based on the foregoing, the petition for writ of *habeas corpus* is **DENIED**. The Clerk of the Court is directed to enter judgment in favor of respondent.


Pursuant to 28 U.S.C. § 1915(a)(3), the Court certifies that an appeal from this decision and order may not be taken *in forma pauperis* because such an appeal would be frivolous and cannot be taken in good faith.  *See Coppedge v. United States*, 369 U.S. 438, 444-45 (1962).  The Court also finds that the petition presents no question of substance for appellate review, and that petitioner has failed to make a "substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2); Fed.R.App.P. 22(b).  Accordingly, a certificate of appealability will not issue.


**SO ORDERED.**


**DATED:**      **Buffalo, New York**
               **April 19, 2011**

                                    s/ H. Kenneth Schroeder, Jr.
                                    **H. KENNETH SCHROEDER, JR.**
                                    **United States Magistrate Judge**

-14-